IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM L. HARRIMAN, | : | |
| Plaintiff, | : | Case No. 2:16-cv-00514 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| COMMISSIONER OF SOCIAL SECURITY, | : | Magistrate Judge Jolson |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before the Court on Defendant-Commissioner of Social Security Carolyn W. Colvin's (the "Commissioner") Objection to Magistrate Judge Jolson's June 30, 2017 **Report and Recommendation** (Doc. 15). Upon independent review by this Court, and for the reasons set forth below, the Commissioner's Objection is hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

**I. BACKGROUND**

Plaintiff William L. Harriman ("Harriman") applied for disability insurance benefits and supplemental security income ("SSI") benefits in October 2012. He alleges that he became disabled on April 15, 2009. After initial administrative denials of his application, Administrative Law Judge Yerian (the "ALJ") conducted a hearing on September 9, 2014. On July 10, 2015, the ALJ issued a decision finding that Harriman was not disabled within the meaning of the Social Security Act.

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disability benefits claim established by the Social Security Administration. *See* 20

C.F.R. § 416.920(a)(4).[1] At step one, the ALJ determined that Harriman has not engaged in substantial gainful activity since April 15, 2009, the alleged onset date.

At step two, the ALJ found that Harriman had severe impairments, including seizure disorder, status-post traumatic brain injury, obstructive sleep apnea, anxiety-related and affective disorders, attention deficit disorder, cognitive disorder, and alcohol use disorder in questionable early remission.

At step three, the ALJ further found that these impairments, singly or in combination, did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

Next, the ALJ found that Harriman had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations.[2] The ALJ's assessment of Harriman's medical impairments and his RFC determined that while Harriman's impairments could be expected to cause some symptomology, the record did not reveal enough objective medical evidence to substantiate the alleged severity of the symptoms. Thus, the ALJ determined that Harriman's symptoms were not intense, persistent, or limiting enough to reduce Harriman's RFC or to preclude all work activity.

The ALJ's determination of Harriman's RFC was based on a consideration of the entire case record, including the objective medical evidence, testimony from Harriman, and opinion testimony from several consultants, physicians, psychologists, counselors, and family members.

Upon evaluating the totality of the record and determining that Harriman's symptoms were not substantiated by the objective medical evidence, the ALJ then weighed both Harriman's credibility and each of the treating and evaluating experts' opinions.

First, the ALJ determined that Harriman was not entirely credible. The ALJ found Harriman's work history after the alleged onset date to be inconsistent with his alleged disabling symptoms and limitations. Additionally, the ALJ found that Harriman was not compliant in taking his anti-seizure medication and that he often misrepresented his symptoms and substance abuse problems relative to the objective medical evidence.

---

[2] The ALJ found the following non-exertional limitations on Harriman's ability to perform a full range of work: Harriman cannot climb ladders, ropes, or scaffolds or work around hazards (such as unprotected heights or dangerous machinery); he cannot engage in commercial driving activities; he can only perform simple, repetitive tasks in a static environment with minimal changes in duties or processes; he should have minimal contact with others; and he cannot work in an environment with strict production quotas or a fast-assembly line pace.

The ALJ next assigned great weight to the opinion assessments of the state agency consultants. The consultants opined that while Harriman had postural and environmental limitations, these limitations would not prevent all work activity, an evaluation the ALJ deemed consistent with the objective evidence in the case record.

The ALJ also assigned significant weight to the opinion of an independent psychological consultative examiner, Dr. Sours, who observed that Harriman had only mild to moderate mental limitations that did not preclude all work activity, an opinion consistent with the objective medical evidence.[3]

The ALJ assigned some weight to the opinion assessment of another independent psychological consultative examiner, Dr. Miller, who determined that Harriman suffered from a significant impairment. The ALJ noted that Dr. Miller's assessment was inconsistent with the medical evidence and largely based on Harriman's subjective complaints. For similar reasons, the ALJ gave minimal weight to the opinion of Dr. Kholer, who observed Harriman only once in order to conduct a psychological assessment for the Ohio Department of Job and Family Services.

The ALJ assigned little to no weight to the opinion of Dr. Bonner, Harriman's treating physician who specialized in internal medicine. While the ALJ acknowledged that treating physicians' opinions are afforded controlling weight when consistent with the objective medical evidence, the ALJ found that Dr. Bonner had limited interactions with Harriman, and noted that her assessment was inconsistent with the medical evidence of record, based largely on Harriman's subjective complaints, and that Dr. Bonner did not specialize in mental health.

---

[3] After Harriman's initial administrative hearing in September 2014, the ALJ requested additional evidence in the form of this psychological consultative examination by Dr. Sours.

Lastly, the ALJ assigned no weight to the testimony of Harriman's stepmother—Kathy Harriman—who alleged that Harriman essentially functioned as a child. The ALJ noted that the evidence of record did not reflect this assertion and that Ms. Harriman is not a medical source.

The ALJ then applied Harriman's RFC at both step four and step five. At step four, the ALJ found that Harriman—a former kitchen helper, selector, and stock clerk—could not perform any of his past relevant work. At step five, relying on vocational expert ("VE") testimony, the ALJ found that based on Harriman's RFC, and given his age, education, and work experience, Harriman could perform occupations that exist in significant numbers in the national economy, such as hand packager, cleaner, or assembler.

Based on this five-step sequential analysis, the ALJ found that Harriman was not disabled under the Social Security Act from his alleged onset date through the date of decision.

The Appeals Council denied Harriman's request for a review of the ALJ's determination on April 12, 2016, thereby rendering the ALJ's benefits-denial decision the Commissioner's final agency action. Harriman then filed suit in federal court, alleging two issues in his Statement of Errors. First, Harriman argues that the ALJ violated his due process rights by failing to develop the record fully and fairly. Specifically, Harriman argues that the ALJ inappropriately refused to submit proposed post-hearing interrogatories to Dr. Sours, whose opinion the ALJ assigned significant weight in making his non-disability determination. Since Dr. Sours' examination was conducted after the initial administrative hearing, Harriman argues that the ALJ's refusal to submit the proposed interrogatories denied him the opportunity to confront the witness and challenge the contrary evidence gathered from this examination. The ALJ refused to submit the interrogatories because he believed that they suggested a specific conclusion as to Harriman's

ability to perform work.[4]  Second, Harriman alleges that the ALJ erred when evaluating and considering the mental health opinion evidence, resulting in the improper rejection of several of Harriman's limitations.

On June 30, 2017, the Magistrate Judge recommended that this Court reverse the Commissioner's non-disability determination and remand the case to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. § 405(g).  Regarding the first alleged error that in failing to submit the interrogatories to Dr. Sours, the ALJ denied Harriman his due process rights by failing to develop the record fully and fairly, the Magistrate first agreed with Harriman that "when the ALJ utilizes [their] discretion and determines that interrogatories will not be presented to a witness, that determination must enjoy the support of substantial evidence."  (Doc. 15, PageID 758 (citing Doc. 14 at 2)).  The Magistrate continued that "if the ALJ improperly denies a plaintiff the opportunity to confront the evidence against him, substantial evidence may not support the decision."  (Doc. 15, PageID 759).  Subsequently, the Magistrate determined that if the proposed interrogatories allowed for Dr. Sours to identify a limitation between no restriction and a restriction that would make Harriman unable to function 10% of the time, this would be relevant and permissible since the VE testified that an individual off-task 10% of the time would be unable to work full-time.  Thus, the Magistrate determined that the ALJ violated Harriman's

---

[4] The ALJ refused to submit Harriman's proposed interrogatories because he felt they were inconsistent with HALLEX provisions that guide how interrogatories should be framed.  The issue surrounded the definition of a "mild" limitation.  The ALJ stated that Harriman's proposed definition of a mild limitation—an inability to function in a particular area "*at least* 10%" of the time"—suggested a specific conclusion and was work-preclusive because it "failed to identify any limitation between no restriction and a restriction that would put the individual off-task at least 10 percent, which generally corresponds to a finding of disability."  (Doc. 9, PageID 86).  However, Harriman argues that the proposed interrogatories actually defined "mild" as an inability to function "*less than* 10% of the work day or work week," which would not be work-preclusive.  Thus, Harriman argued that the ALJ's refusal to submit the interrogatories was based on a mistake of fact.

6

due process rights by failing to submit the proposed interrogatories to Dr. Sours, and that the ALJ's decision should be reversed. Given the Magistrate's decision to recommend reversal and remand based on Harriman's first alleged error, the Magistrate did not analyze Harriman's second alleged error.

In conclusion, the Magistrate recommended to this Court that the Commissioner's non-disability finding be reversed and the case be remanded to the Commissioner and the ALJ for further consideration. The Commissioner timely objected.

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)).

## III. ANALYSIS

The Commissioner objects to the Magistrate Judge's Report and Recommendation on the ground that the Magistrate erred in determining that the ALJ violated Harriman's due process

7

rights when he refused to submit the proposed interrogatories to Dr. Sours. The Commissioner argues that since the ALJ complied with the HALLEX Manual, and that there is no absolute right to submit interrogatories, the ALJ's failure to submit the interrogatories at issue does not invoke due process concerns. The Commissioner requests that the Court reject the Magistrate's Report and Recommendation in its entirety because of this alleged error.

### A. The ALJ's Refusal to Submit Harriman's Proposed Interrogatories to Dr. Sours Is Not Supported by Substantial Evidence.

The Commissioner objects to the Magistrate Judge's recommendation regarding the violation of Harriman's due process rights. The Commissioner alleges that in refusing to submit Harriman's proposed post-hearing interrogatories, the ALJ complied with HALLEX and maintains the discretionary authority to decide whether interrogatories are appropriate and in compliance (Doc. 16, PageID 762 ("The ALJ has the discretion to allow or deny the claimant to ask questions of the psychological consultative examiner, either in person or through interrogatories. As it was within the ALJ's discretion, there was no violation of Plaintiff's due process rights when the ALJ decided not to submit the interrogatories. . .")). The Commissioner argues that the first case the Magistrate cites in the report and recommendation holds that "due process does not require the Commissioner to allow a social security claimant upon request to cross-examine every physician providing post-hearing evidence in order for the hearing to be 'full and fair.'" (Doc. 16, PageID 763–64 (citing *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996)). Reviewing the record in its entirety, this Court disagrees with the Commissioner and finds that the ALJ's refusal to submit Harriman's proposed post-hearing interrogatories to Dr. Sours was not supported by substantial evidence and therefore violated Harriman's due process rights.

8

Similar to cross-examination, interrogatories provide the plaintiff "the opportunity to present all of his evidence and to confront the evidence against him." *Flatford*, 93 F.3d at 1306–07. This Court agrees with both the Commissioner and Harriman that the decision to submit interrogatories generally falls within the discretion of the ALJ. However, in social security cases, "due process requires that a social security disability claimant have the opportunity to cross-examine a reporting physician where reasonably necessary. . ." to fairly and fully develop the record. *Id.* at 1307; *see also Sturgeon v. Comm'r of Soc. Sec.*, 1:12-cv-833, 5 (S.D. OH Dec. 17, 2013), *adopted and affirmed* (S.D. OH Feb. 18, 2014) ("Due process requires in the context of a social security hearing that the proceedings be 'full and fair.''); *Gambill v. Shinseki*, 576 F.3d 1307, 1326 (Fed. Cir. 2009) (citing *Flatford v. Chater*, 93 F.3d 1296 (6th Cir. 1996) ("[E]very circuit that has ruled on the issue has held that due process affords social security disability claimants either the right of cross-examination or the right to serve interrogatories as a means of challenging post-hearing medical reports."). This is particular pertinent when the reporting physician's examination is conducted post-hearing, because "when evidence is gathered post-hearing at the initiation of the [ALJ] a heightened danger exists that the claimant may not have the opportunity to cross-examine the physician if needed." *Id.* If the claimant is wrongly denied this opportunity to cross-examine, substantial evidence may not support the ALJ's decision. *See Quattlebaum v. Comm'r of Soc. Sec.*, 850 F. Supp. 2d 763, 781 (S.D. Ohio 2011).

Here, this Court finds that Harriman's proposed post-hearing interrogatories were reasonably necessary to fully and fairly develop the record. The ALJ's decision not to submit them to Dr. Sours is therefore not supported by substantial evidence and in violation of Harriman's due process rights.

In determining Harriman's RFC and concluding that he is not disabled, the ALJ relied heavily upon the medical opinion testimony of Dr. Sours, who found Harriman to have mild to moderate limitations that would not necessarily preclude all work activity. Importantly, Dr. Sours was the only examining physician of record whose opinion was not discredited by the ALJ in calculating Harriman's RFC. Given the weight assigned to Dr. Sours' testimony, and the fact that Dr. Sour's examination occurred after the initial administrative hearing, allowing Harriman the opportunity to cross-examine Dr. Sours and confront the contrary evidence through the form of the proposed interrogatories is reasonably necessary in itself to develop and fair and full record. This alone warrants reversal and remand if the interrogatories were appropriately scoped and in compliance with HALLEX.

Here, the ALJ's refusal to submit the proposed post-hearing interrogatories to Dr. Sours appears to have been based on a factual misunderstanding and ALJ error. In refusing to submit the proposed interrogatories, the ALJ noted that Harriman's proposed interrogatories were not in compliance with HALLEX. Specifically, the ALJ stated that the interrogatories definition of a mild limitation—an inability to function in a particular area "***at least*** 10%" of the time"— suggested a specific conclusion and was work-preclusive because it "failed to identify any limitation between no restriction and a restriction that would put the individual off-task at least 10 percent, which generally corresponds to a finding of disability." (Doc. 9, PageID 86). Therefore, the ALJ seemingly believed that *any* mild limitation would trigger a finding that Harriman was unable to function at least 10% of the time and would preclude any work activity.

However, Harriman argues that the proposed interrogatories actually defined a "mild" limitation as an inability to function "***less than*** 10% of the work day or work week." The record supports Harriman's argument, demonstrating that the proposed interrogatories included a list of

definitions—ranging from none to extreme—that offered Dr. Sours an appropriate range of limitation levels that indicated progressively worsening percentage levels of functioning (Doc. 9, PageID 444). Most importantly, the record reflects that the proposed interrogatories offered a definition of a "mild" limitation as an inability to function "**less than** 10% of the work day or work week." (*Id.*) (Emphasis added). Thus, the proposed interrogatories would have given Harriman the opportunity to cross-examine Dr. Sours in a HALLEX-compliant manner that did not suggest a specific conclusion as to Harriman's ability to function in a work setting. Dr. Sours could have determined that Harriman had mild limitations that would not preclude all work activity. However, Dr. Sours' answers could also potentially bring forth favorable evidence for Harriman that could significantly impact Harriman's RFC and the ultimate determination as to whether or not he is disabled. Since the ALJ's refusal was based on a factual mistake as to the proposed interrogatories compliance with HALLEX, Dr. Sours' answers to Harriman's proposed interrogatories are reasonably necessary for the development of a full and fair record, and the ALJ's refusal to submit them is not supported by substantial evidence and in violation of Harriman's due process rights.

As explained more thoroughly in the Report and Recommendation, the ALJ refusal to submit Harriman's post-hearing interrogatories to Dr. Sours was not supported by substantial evidence and in violation of Harriman's due process rights because these interrogatories were reasonably necessary to fairly and fully develop the record. Accordingly, the Court **ACCEPTS** the Magistrate Judge's Report and Recommendation on this point and **REVERSES** the Commissioner's denial of benefits and **REMANDS** the case to the Commissioner and the ALJ for further review.

## IV.  CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Jolson's **Report and Recommendation** (Doc. 15), thereby **OVERRULING** the Commissioner's objection (Doc. 16).  The Commissioner's denial of benefits is **REVERSED**.  This case is hereby **REMANDED**.

**IT IS SO ORDERED.**

                                                   /s/ Algenon L. Marbley  
                                                 **ALGENON L. MARBLEY**  
                                                 **UNITED STATES DISTRICT JUDGE**

**DATED:  September 26, 2017**